ORIGINAL

cc:
All counsel
of Record
Fin.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 1 3 2005

at __12__ o'clock and __15__ min __P__ M
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 04-0075 AWT |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR JUDGMENT OF ACQUITTAL |
| VIVIAN WAI WON SOONG, | |
| Defendant. | |

Defendant Vivian Wai Won Soong was tried on four counts of violating 26 U.S.C. § 7206(2), aiding and assisting in the preparation of fraudulent or false income tax returns, and one count of conspiracy, in violation of 18 U.S.C. § 371, to defraud the United States, pursuant to the fraudulent income tax return scheme. A

jury found her guilty of all counts. Before the court is defendant's motion under Fed. R. Crim. P. 29 for a judgment of acquittal, made at the close of the government's case and renewed after the return of the verdict. The court reserved ruling on the motion and called for briefing, which has now been completed. For the reasons stated below, the court grants the motion.[1]

### I.

The legal standard governing a Rule 29 motion is well-established. The question is whether there is sufficient evidence to support the verdict. In making that determination, the court must, "viewing the evidence in the light most favorable to the prosecution," decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original) (citation omitted); see also *United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004).

### II.

Defendant is a tax preparer. The charged scheme involved advising client-taxpayers, all of whom were residents of and wage earners in the State of Hawaii, to claim a foreign earned income credit by filing a Form 2055 as a part of their

---

[1] This written order confirms the oral order, made in open court on September 12, 2005, granting defendant's motion for a judgment of acquittal, and elaborates on the reasons therefor, as expressed in open court.

respective federal income tax returns. This advice was premised on a government publication, which had nothing to do with income taxes, that defined the "United States" as not including the 50 states. As would be expected, the scheme quickly fell apart primarily because, although Forms 2055 were filed and the credit claimed, each taxpayer in fact listed his or her true address in the State of Hawaii as his or her residence and listed the true name of his or her employer and true place of employment, which also was in the State of Hawaii.

Defendant invoked the good faith defense, first recognized in *Cheek v. United States*, 498 U.S. 192 (1991). *Cheek* held that a subjective good faith belief of what the Internal Revenue Code permits, even though that belief is objectively unreasonable, is a defense in a criminal tax prosecution. *Id.* at 199-201 To put the *Cheek* proposition another way, the government, in a tax prosecution, has the burden of proving beyond a reasonable doubt that the defendant acted "willfully," *i.e.*, that the defendant's actions were a "voluntary, intentional violation of a known legal duty." *Id.* at 201. As to this defendant, I conclude that the government has not met that burden.

### III.

Defendant was employed by RB Tax Service, which was owned by co-defendant Richard James Basuel. Sometime in 2000, Basuel discovered a "new

way" to prepare an individual's income tax return when he attended a "tax seminar." That "new way" was to claim the foreign earned income credit of up to $74,000, even though the income was earned in the State of Hawaii. The basis for claiming that credit, as Basuel testified, was because, according to a government publication, Hawaii was not a part of the United States. Defendant presumably learned of this "new way" from Basuel – there is no evidence that defendant attended any such tax seminar, although, of course, it is possible that she did.[2]

In 2000, defendant started offering to prepare her clients' income tax returns the "new way" for 1999 and, in some cases, for earlier years as well. The evidence is consistent that defendant, after explaining the "new way," gave her clients the choice of having their returns prepared in the "new way" or the old way, *i.e.*, without claiming the foreign earned income credit.[3] Four of defendant's clients, each of whom elected to have his or her return prepared in the "new way," testified for the government. All of them testified to defendant's apparent sincerity in the validity of the "new way." Contrary to the flat fee which was charged for

---

[2] Other tax preparers employed by co-defendant Basuel were also charged in the same indictment with similar offenses. They have entered pleas of guilty and await sentencing.

[3] There is no evidence of how many of defendant's clients elected to have their returns prepared the old way and how many elected the "new way."

-4-

preparing returns in the old way, the fee for the "new way" was to be ten percent (10%) of any tax refund.

It didn't take the IRS long to catch on to this scheme. It quickly sent "courtesy" letters to the taxpayers explaining their error and suggesting that they file amended returns. Each of the four taxpayer-clients of defendant who testified quickly filed amended returns – none ever received a refund predicated on the foreign earned income credit; consequently, defendant (and RB Tax Service) never received her ten percent fee.[4]

## IV.

On this record, the question which immediately comes to mind is why would anyone engage in such a transparently-sham scheme if she did not believe in its validity? Why was there no effort made to hide the fact on the Form 2055 that each taxpayer for whom the foreign earned income credit was claimed resided and worked in the State of Hawaii? The government contends that the evidence "clearly established that RB Tax Services as a business stood to reap a huge financial windfall from the 'new way' of preparing returns given the 10% fee that

---

[4] Unlike with respect to co-defendant Basuel, there is no evidence that when the IRS questioned the foreign earned income credit, defendant tried to justify the credit on other grounds.

RB was charging customers."[5] But realization of that windfall depended on RB's customers actually receiving their tax refunds – an assumption both the record and common sense refute.

The government characterizes this scheme as "outrageous and unreasonable." It is, indeed, unreasonable, even from a schemer's point of view. The manner in which the scheme was carried out virtually guaranteed that it would quickly be uncovered. If the motive was profit, that profit was highly unlikely to be realized because it was contingent on the scheme's success, *i.e.*, that refunds would be paid. So the question remains, why would one engage in such a scheme unless one believed that the claimed tax refunds would be paid – that the foreign earned income credit could legitimately be claimed? The government has not adduced any evidence from which an answer to this question supporting lack of good faith could legitimately be inferred, *i.e.*, any proof of the lack of a subjective good faith belief in the scheme's legality. Defendant's actions simply are not consistent with classic fraud or deceit.[6]

As the Ninth Circuit noted shortly after *Cheek* was decided:

---

[5] There was no evidence of how much of that "windfall" would filter down to defendant.

[6] Nor is there any evidence of any other motive, such as a tax protester's animosity towards the IRS.

> [T]he government could not carry its burden of demonstrating that the defendant taxpayer willfully failed to file a tax return unless the government "negat[ed] a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, [defendant] had a good-faith belief that [the defendant] was not violating any of the provisions of the tax laws[.]" If the defendant had a subjective good faith belief, no matter how unreasonable, that he was not required to file a tax return, the government cannot establish that the defendant acted willfully.

*United States v. Powell*, 955 F.2d 1206, 1211 (9th Cir. 1991) (quoting *Cheek*, 498 U.S. at 200) (citation omitted) (emendations in the original). Here, the government failed to negate that defendant had a subjective good faith belief, however objectively unreasonable, that claiming the foreign earned income credit was not in violation of any provision of the Internal Revenue Code. On the contrary, all of the reasonable inferences from the evidence point in the other direction.

The government bore a particularly onerous burden of proof in this case -- the burden of proving defendant's subjective state of mind beyond a reasonable doubt. It should come as no surprise that the government will not be able to carry that burden in all cases. This is one of those cases.

V.

For the foregoing reasons,

**IT IS ORDERED** that defendant Vivian Wai Won Soong's motion for

judgment of acquittal is **GRANTED** as to all counts. Defendant is discharged and bond is exonerated.

Dated: Sep. 13, 2005

                                                      A. WALLACE TASHIMA
                                                     United States Circuit Judge
                                                     Sitting by Designation